**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Karen Kelly, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 CV 1005 |
| | ) | |
| Dean Chambers, Craig Esplin, | ) | |
| Ramtin Sabet, Maynard Williams, | ) | |
| and the Village of Oakwood Hills, IL | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Defendant the Village of Oakwood Hills, Illinois ("Oakwood Hills"), and individual defendants, Dean Chambers, Craig Esplin, Maynard Williams, and Ramtin Sabet move to dismiss Karen Kelly's ("Plaintiff") complaint alleging retaliation against her First Amendment rights to speech, assembly, freedom of association, and petitioning the Government for redress in its entirety. For the reasons stated below, we deny Defendants' motion to dismiss as to Ramtin Sabet and grant Defendants' motion to dismiss for the remaining defendants.

**I. BACKGROUND**

Plaintiff, a resident of Oakwood Hills, was elected to the Oakwood Hills Board of Trustees ("Board") in April of 2005. (Am. Compl. ¶ 8). She served as an Oakwood Hills Trustee from May 2005 until February 2007. (*Id.* ¶ 9). Plaintiff alleges that while she was Trustee the community had

1

concerns regarding the expanding size of the Oakwood Hills Police Department ("Department"), the increasing funds necessary to support the Department, and the conduct of its officers. (*Id.* ¶10). In response, the Independent Citizens Police Committee ("Committee") was formed to explore various alternatives to secure law enforcement services for Oakwood Hills, and Plaintiff became involved in the Committee. (*Id.* ¶ 11).

On October 24, 2006, Plaintiff attended a public meeting hosted by the Committee regarding law enforcement issues. (*Id.* ¶¶ 12, 15). Plaintiff generated and distributed flyers for this meeting. (*Id.* ¶¶ 13, 14). On October 25, 2006, the *Northwest Herald* published an article about the meeting that included Plaintiff's criticisms of the Department. (*Id.* ¶¶ 16, 32(f), (g)).

According to Plaintiff, on October 25, 2006, in retaliation for exercising her First Amendment rights, Police Officer Ramtin Sabet generated a police incident report regarding an August 26, 2006 traffic stop involving Plaintiff's minor son.[1] (*Id.* ¶¶ 18-20). The police report stated that Plaintiff, who was at the stop, refused to obey a police officer and obstructed the officer in the course of his duties. (*Id.*) Neither Plaintiff, nor her son, were issued citations or arrested at the traffic stop. (*Id.* ¶ 21).

At the December 7, 2006 Board meeting, Trustee Esplin publicly initiated a fact-finding probe regarding Plaintiff's alleged "potential abuse" of a police officer. (*Id.* ¶¶ 22, 23). Plaintiff alleges that Williams and Chambers,[2] respectively as Police Chief and President, participated in this

---

[1] There is a discrepancy in Plaintiff's Amended Complaint regarding when this police report was generated. Plaintiff also alleges that the police report was generated on or about October 31, 2006. (Am. Compl. ¶ 54). We will use the earlier date in our analysis because for the purpose of this motion to dismiss, we must draw all inferences in favor of the Plaintiff. *Thompson v. Ill. Dep't. of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002) (stating that the court must draw all reasonable inferences in Plaintiff's favor).

[2] Dean Chambers is also referred to as the Mayor of Oakwood Hills. (Am. Compl. ¶ 24; Mot. at 1).

fact-finding probe, (*Id.* ¶ 24), and claimed that Plaintiff obstructed a police officer, refused to heed his commands, and attempted to use her position as Trustee to exert undue influence over him. (*Id.* ¶ 26). These accusations were also posted on the Oakwood Hills website. (*Id.* ¶ 28). Plaintiff contends these accusations were false, malicious, and/or made with reckless disregard of whether the alleged conduct was false or true. (*Id.* ¶ 27).

On January 31, 2007, the Oakwood Hills Public Safety Finance Administration Committee tendered a letter to Plaintiff requesting that she answer the charges levied against her with respect to the August 26, 2006 traffic incident. (*Id.* ¶ 29). Plaintiff alleges that this letter was in continued retaliation for exercising her First Amendment rights. (*Id.*) In addition, she alleges that because of Defendants' actions, she is no longer actively involved in the Committee. (Pl.'s Resp. at 8).

Plaintiff brings this action under 42 U.S.C. § 1983, claiming that Defendants retaliated against her First Amendment free exercise rights and defamed her causing further injuries such as: emotional distress, humiliation, personal indignity, mental distress, and embarrassment. (Am. Compl. ¶¶ 35, 41, 46, 52, 57, 62, 67). Among other things, Plaintiff asks us to enter judgment in her favor and award her compensatory damages, punitive damages, attorney fees, and costs. (*Id.*)

Defendants now move to dismiss the Complaint for failure to state a claim on three grounds. First, Defendants argue that they are entitled to qualified immunity regardless of the veracity of their statements because their alleged acts of retaliation were in the nature of speech and did not contain threats, coercion or intimidation, and it is not clearly established that their actions could be the basis of a First Amendment claim. Second, defendants Chambers and Esplin claim absolute legislative immunity for their investigation of Plaintiff's alleged wrongdoing. Third, Defendants contend that Plaintiff has failed to plead any municipal liability against Oakwood Hills as required under § 1983

because her complaint lacks allegations that the individual defendants possessed final policy-making authority for Oakwood Hills.

## II. STANDARD OF REVIEW

A court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) when "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). Thus, in considering a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson*, 300 F.3d at 753. A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

## III. ANALYSIS

### A. Qualified Immunity

Defendants claim protection under the doctrine of qualified immunity as it is not clearly established that their actions could be the basis of a First Amendment retaliation claim. Courts have consistently recognized that not every action by a public official taken in retaliation for an individual's exercise of First Amendment rights is actionable under § 1983. *Rees v. Dahl,* 24 Fed. Appx. 907, 911 (10th Cir. 2001), *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686-88 (4th Cir. 2000); *Mnyofu v. Bd. of Educ.*, No. 03 C 8717, 2007 WL 1308523, at *3 (N.D. Ill. Apr. 27, 2007); *Villagrana v. Vill. of Oswego*, No. 04 C 4603, 2005 WL 2322808, at *6 (N.D. Ill. Sept. 22, 2005).

4

The Supreme Court has stated that, when evaluating a claim of qualified immunity, the first question is whether the plaintiff has alleged the deprivation of an actual constitutional right. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692, 1697 (1999). If the deprivation of a constitutional right is supported, then the court examines the issue of immunity. *Saucier v. Katz*, 533 U.S. 194, 199, 121 S. Ct. 2151, 2155 (2001). Defendants are entitled to immunity if "the law governing the official's conduct was clearly established" or if "a reasonable [official], in light of the clearly established law, could have believed that his conduct was lawful." *Id.* Defendants claim that Plaintiff fails to assert the deprivation of an actual constitutional right, and even if we find there was such a deprivation, that they are protected by immunity because there is not an existing case factually similar to the issues presented.

*1. Retaliation Claim as Deprivation of Constitutional Right*

Plaintiff argues that Defendants' actions were taken in retaliation for exercise of her First Amendment rights. To establish such a claim, Plaintiff must show:

> (1) that [she] was engaged in a constitutionally protected activity; (2) that the Defendant's adverse action caused the Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the Plaintiff's constitutional rights.

*Chicago Reader v. Sheahan,* 141 F. Supp. 2d 1142, 1144 (N.D. Ill. 2001) (applying Seventh Circuit retaliation standard in employee cases to claim brought by non-employee); *see also DeGuiseppe v. Vill. of Bellwood,* 68 F.3d 187, 191 (7th Cir. 1995) (requiring a public employee plaintiff to show that he suffered an adverse employee action motivated by the exercise of his free speech rights and that the adverse action was sufficient to chill employee's speech).[3] Defendants contend that Plaintiff

---

[3] Seventh Circuit dicta suggests there is no critical distinction between the injury standards in employment and non-employment retaliation cases. *Powers v. Summers*, 226 F.3d 815, 820 (7th

fails to satisfy factors two and three, and therefore fails to establish her retaliation claim.[4]

### a. Chilling Effect of Adverse Action

Defendants argue that the second factor is not met because they did not cause Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in her activity. *Chicago Reader,* 141 F. Supp. 2d at 1144. Plaintiff disagrees because Defendants' alleged adverse actions included: the generation of a false police report two months after a traffic stop, their initiation of a malicious fact-finding probe into Plaintiff's purported misconduct at the traffic stop, their false and malicious accusations at the December 7, 2006 Board meeting, and the posting of these accusations on the Village website. Moreover, Plaintiff is no longer actively involved in the Committee.

Defendants point to decisions where courts have held that expressed hostility by Board members, instituting policies to restrict citizen participation at Board meetings, and failing to stop other members of the public from heckling the plaintiffs were unlikely to chill a person of ordinary firmness. *Mnyofu*, No. 03 C 8717, 2007 WL 1308523, at *3; *see also Rees,* 24 Fed. Appx. at 910 (holding that filing a state court action seeking return of certain files and property that plaintiff had in his possession would not chill a person of ordinary firmness).

Plaintiff contends, however, that even minor forms of retaliation can support a First Amendment claim because the Seventh Circuit does not require that retaliation be "monstrous to be

---

Cir. 2000). "Any deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable . . . if the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty." *Chicago Reader,* 141 F. Supp. 2d at 1145 (citing *Power*, 226 F.3d at 820)).

[4] The first factor is moot because Defendants have assumed for purposes of this motion that Plaintiff's activities were constitutionally protected. (Mot. at 4 n.1).

actionable." *DeGuiseppe*, 68 F.3d at 192. The Seventh Circuit has found that false accusations and petty humiliations, if orchestrated into a campaign of political retaliation, are actionable. *Pieczynski v. Duffy*, 875 F.2d 1331, 1336 (7th Cir. 1989) (stating that jury could have found campaign of harassment as defendant confined plaintiff's duties to monotonous paper work, terminated her supervisory authority over other employees, removed her long-distance line, called her a liar, denied her requests for vacation time and administrative leave, abused her for leaving work early one day to pick up an ill child, failed to introduce her to new employees, turned down her repeated requests to change her lunch hour, and failed to invite her to his birthday party; and made baseless accusations that plaintiff used an unauthorized parking place and took a bribe by accepting a gift of a cordless telephone from a city contractor); *see also Chicago Reader,* 141 F. Supp. 2d at 1146 (holding that denying a newspaper reporter access to a legal aid program for incarcerated mothers could have chilled someone's speech).

In light of these authorities, Defendants' conduct, and its effect on Plaintiff's activities, we conclude that Plaintiff has pled sufficient facts for the second factor in her retaliation claim.

### b. Constitutional Protection of Adverse Action

With respect to the third factor,[5] Defendants argue that their alleged retaliatory actions did not "adversely affect[] the Plaintiff's constitutionally protected speech." *Suarez,* 202 F.3d at 685-86. This determination "is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the

---

[5] As stated above, the third factor in this analysis is whether "*the adverse action* was motivated at least in part as a response to the exercise of the Plaintiff's constitutional rights." *Chicago Reader*, 141 F. Supp. 2d at 1144 (emphasis added). Apparently, Defendants are not challenging whether or not their acts were motivated by Plaintiff's exercise of her constitutional rights, but only whether their actions "adversely affected" Plaintiff.

7

retaliatory acts." *Id.* at 686. "The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated." *Id.* at 687. Plaintiff is not an ordinary citizen, but rather an elected official of Oakwood Hills, holding a position of trust. Defendants argue that Plaintiff tried to use her position to influence a police officer to go easy on her son. Therefore, their allegedly retaliatory act of demanding that Plaintiff respond to charges of official misconduct was at least of the same magnitude as Plaintiff's speech criticizing Oakwood Hills and the Department.

Moreover, "courts have declined to find that a [defendant's] actions have adversely affected a [plaintiff's] exercise of [her] First Amendment rights where the [defendant's] alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Id.* at 686. "Where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Id.* at 687; *Villagrana,* No. 04 C 4603, 2005 WL 2322808, at *3-4 (stating allegedly defamatory statements made by a police officer of a local village to the plaintiff's employer, the county sheriff's department, did not amount to an adverse action as there was no allegation that the "retaliatory acts took the form of anything other than speech"). This is true even where the plaintiff suffers severe adverse consequences as a result of the retaliatory actions. *See id.* (holding that defendants' defamatory statements were not adverse even when they could subject the plaintiff to discipline); *see also X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 60, 71 (2d Cir. 1999) (stating that letter written by New York Assembly member and House Representative may have come close to implying

8

prosecution, but the court did not believe that the legislators ever threatened to use the power of the state against the plaintiffs).

Plaintiff argues that although mere speech is constitutionally protected, Defendants' actions are not. *Villagrana*, No. 04 C 4603, 2005 WL 2322808, at *4 (citing *X-Men*, 196 F.3d at 71). Plaintiff claims that Defendants' tried to intimidate and punish her through their actions. Defendants respond that their actions were public accusations of official misconduct and wrongdoing, and that the police report was a written report, a form of speech that carried no threat, arrest, or coercion.

Plaintiff alleges only two acts that suggest more than mere speech: the initiation of the fact-finding probe and the police report. We need only evaluate the fact-finding probe under the qualified immunity doctrine as it applies to Williams, because Esplin and Chambers are protected by absolute legislative immunity as addressed below. Plaintiff alleges that Williams furthered the fact-finding probe by participating in the December Board meeting where he made false and slanderous statements about her. Williams' participation, therefore, amounts to pure speech, and under *Villagrana,* entitles him to qualified immunity.

In contrast, the police report drafted by Officer Ramtin Sabet may suggest intimidation and punishment more than a mere form of written speech, particularly as it was generated two months after the traffic stop occurred, and a day after Plaintiff criticized law enforcement at a public meeting. Plaintiff, however, makes no specific factual connections or allegations of conspiracy that might tie the remaining defendants Chambers, Esplin, or Williams to the police report, and we cannot speculate that such connections exist. *Twombly*, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level."). We find that the third factor

9

of Plaintiff's retaliation claim against defendant Sabet is satisfied, and therefore, she has sufficiently pled a deprivation of a constitutional right.

### 2. Knowledge of Unlawful Actions

#### a. Clearly Established Law

For Sabet to be protected by qualified immunity from the alleged deprivation discussed above, he must show that his actions "did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 122 S. Ct. 2508, 2515 (2002). The burden is on Plaintiff to show that the right was clearly established. *White v. City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002). Defendant argues that in First Amendment cases, the Seventh Circuit has required that there must be a case that is factually similar to provide notice that actions are unlawful. *Gregorich v. Lund,* 54 F.3d 410, 415 (7th Cir. 1995).

Plaintiff contends that the Supreme Court rejected a requirement that a previous case be "fundamentally similar" in a qualified immunity analysis. *United States v. Lanier*, 520 U.S. 259, 268-71, 117 S. Ct. 1219, 1226-28 (1997). In fact, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741 (holding that respondents are not shielded from liability for punishing an inmate by handcuffing him to a hitching post as it unnecessarily and wantonly inflicted pain in an obvious and clear violation of the Eighth Amendment, and prior case law had made it clear that other forms of corporal punishment that offend contemporary concepts of decency and human dignity including handcuffing inmates to fences or cells are unconstitutional). All that is necessary is that prior decisions provide reasonable warning to officials that their conduct violates constitutional rights. *Lanier*, 520 U.S. at 269; *see also Bell v. Marseilles Elementary Sch.*, 160 F. Supp. 2d 883, 890 (N.D. Ill. 2001) (stating that while

"the law must be clear in the particular factual context at issue for qualified immunity to be inapplicable, this does not mean a case scenario exactly like the one at hand must have been addressed by courts in the past").

Even where established law provides notice, Sabet contends that immunity is still available for reasonable mistakes. *Saucier*, 537 U.S. at 201-02; *see also Baird v. Bd. of Educ.*, 389 F.3d 685, 696 (7th Cir. 2002) (stating that "[q]ualified immunity [ ] affords public officials a certain leeway in their actions"); *Chesser v. Sparks*, 248 F.3d 1117, 1124 (11th Cir. 2001) ("Because no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case."). *But cf. Olech v. Vill. of Willowbrook*, No. 97 C 4935, 2002 WL 31317415, at *22-24 (N.D. Ill. Oct. 10, 2002) (denying qualified immunity where village water connection to plaintiff's property was irrationally conditioned on the grant of a thirty-three foot easement and was in alleged retaliation for plaintiff's suit against the village regarding storm water drainage while other similarly situated property owners were not required to dedicate a right-of-way or an easement to receive water).

Prior decisions have held First Amendment retaliation violations are found when advocacy ends and action begins. *Villagrana*, No. 04 C 4603, 2005 WL 2322808, at *4 (citing *X-Men*, 196 F.3d at 71). Moreover, police actions previously have been held to be intimidating by the Supreme Court. *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 67, 83 S. Ct. 631, 637-38 (1963) (stating that police officers' actions were sufficient to trigger First Amendment concerns because of the pressure exerted via informal sanctions and threats of legal action where officers physically visited distributors to ensure that corrective measures regarding objectionable materials had been taken); *see also Bennett v. Vill. of Oak Park,* 748 F. Supp. 1329, 1332 (N.D. Ill. 1990)

(rejecting police officer's claim of qualified immunity where officer intimidated plaintiff by arriving at his gas station, directing him to meet in the back office with the door closed, and warning him to stop talking to the media).

It is unlawful for Defendants to retaliate against Plaintiff for exercising her free speech rights. *Suarez*, 202 F.3d at 685 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574, 88 S. Ct. 1731, 1738 (1968)). The law is clearly established that police actions may intimidate the expression of free speech, providing defendant Sabet with sufficient notice that his actions could be intimidating and unlawful. Accordingly, Sabet is only entitled to qualified immunity if he can show that a reasonable officer would not have known that the circumstances of his police report would be improper.

### b. Reasonable Person Standard

Plaintiff contends that because no citation was issued at the traffic stop when it occurred, a reasonable person would then infer that a police report generated two months later and a day after Plaintiff criticized law enforcement was an act of retaliation. In the past, the Supreme Court has "cautioned against the 20/20 vision of hindsight in favor of deference to the judgment of reasonable [police] officers." *Saucier*, 533 U.S. at 205 (holding that a reasonable officer in petitioner's position could have believed that hurrying respondent away from the scene, by shoving him into a van was within the bounds of appropriate police responses, as it cannot be said that there was a clearly established rule that would prohibit this use of force). However, this deference to police officers by the *Saucier* Court was in the Fourth Amendment context where it was acknowledged that police officers are often forced to make tense, uncertain split-second judgments in rapidly evolving circumstances. *Id.* at 205. In contrast, defendant Sabet made his police report from the safety of his

office two months after the incident occurred.

Because existing case law and common experience suggest that a reasonable officer in Sabet's position would have known that filing of a police report under these circumstances would be improper, we conclude that he is not entitled to qualified immunity. We now turn to Esplin and Chambers' claim for absolute immunity.

**B. Absolute Legislative Immunity**

As noted earlier, Plaintiff alleges that Defendants' publicly initiated fact-finding probe during the December 7, 2006 Board meeting was an act of retaliation. Chambers and Esplin contend that they are entitled to absolute legislative immunity in their respective roles as Oakwood Hills President and Trustee. Individual defendants are entitled to absolute immunity from § 1983 claims when they act in an area where legislators have traditionally had the power to act. *Tenney v. Brandhove*, 341 U.S. 367, 376-77, 71 S. Ct. 783, 788 (1951). "The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings" is necessary for them to effectively discharge their public duties. *Id.* at 377-73. The Supreme Court has extended this absolute immunity to local legislators for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S. Ct. 966, 972 (1998); *see* 65 ILCS 5/5-3-6 (2007) (establishing that a council or board is purely legislative).

Plaintiff argues that "[f]or a legislator to be absolutely immune from civil or criminal suit, he must have been acting in his or her legislative capacity." *West v. Phillips*, 883 F. Supp. 308, 314 (S.D. Ind. 1994) (citing *Tenney*, 341 U.S. at 376)). Plaintiff contends that "the Supreme Court has construed the legislative capacity narrowly, holding that legislative immunity does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs, but not a part of

13

the legislative process itself." *Hansen v. Bennett*, 948 F.2d 397, 402 (7th Cir. 1991). While legislative and non-legislative activities can occur at the same event, immunity depends on the function the legislator was performing when he executed the act in question. *Id.* at 401 (holding that ejecting a citizen from a council meeting for being disruptive is not protected by absolute immunity as restoring order to the meeting was not a part of the legislative process); *see also Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988) (holding administrative or executive acts of legislators such as employment decisions are not protected by qualified immunity, however, employment terminations resulting from budget decisions are protected because budget-making is a quintessential legislative function); *Chi. Miracle Temple Church, Inc. v. Fox*, 901 F. Supp. 1333, 1340-43 (N.D. Ill. 1995) (denying qualified immunity to village trustees for their vote authorizing purchase of real property because it "simply reflect[s] an ad hoc response to an issue confronting the governmental body" as opposed to an enactment or promulgation of public policy).

Plaintiff argues that the Seventh Circuit has accorded legislators absolute immunity only when voting on a resolution, speaking on legislation or in a legislative hearing, or subpoenaing records for use in a legislative hearing. *Id.* at 402. Defendants contend those categories are not exclusive. Indeed, besides granting absolute legislative immunity to legislators for core legislative acts such as introducing, debating, and voting on legislation, courts have also granted absolute immunity for: (1) activities that could not give rise to liability without inquiry into legislative acts and the motives behind them; and (2) activities essential to facilitating or preventing the core legislative process. *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997) (holding that participation in the introduction and passage of a rezoning ordinance is a legitimate legislative activity); s*ee, e.g.*, *Gravel v. United States*, 408 U.S. 606, 616, 92 S. Ct. 2614, 2622 (1972) (granting

14

immunity for senator's actions in subcommittee to protect legislative process); *Hanania v. Loren-Maltese*, 319 F. Supp. 2d 814, 823 (N.D. Ill. 2004) (stating "absolute legislative immunity attaches to all actions taken in the 'sphere of legitimate legislative activity'").

Furthermore, as Defendants point out, absolute immunity has been specifically extended to investigations as they are "an established part of representative government." *Tenney*, 341 U.S. at 378 (holding that a fact-finding committee of the California legislature was entitled to call the plaintiff to appear and give testimony, and that the committee members were entitled to absolute immunity for their actions despite claims by the plaintiff that their purpose was to intimidate, silence and deter him from exercising his First Amendment rights). Under *Tenney*, investigation and inquiry by a committee of a legislative branch is within the legislative sphere. *Tenney*, 341 U.S. at 378; *see, e.g., Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir. 1997) (holding that town board members who used a public hearing to question plaintiff and investigate whether to abolish a local police department were cloaked with absolute immunity because their decision was essentially legislative); *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 29-30 (1st Cir. 1996) (senate investigation into murders of arrestees committed by police "fell well within the legitimate legislative sphere" and therefore "defendants were immune from any civil or criminal prosecution based on conduct directly related to the [ ] investigations"); *Ellis v. Coffee Cty. Bd. of Registrars*, 981 F.2d 1185, 1190-92 (11th Cir. 1993) (county commissioners investigating and identifying ineligible voters were performing their legislative function and, therefore, were protected by the doctrine of legislative immunity).

Esplin and Chambers as public officers had a duty to investigate Plaintiff's alleged misconduct. Their fact finding probe was a legitimate legislative activity under *Tenney*, and

therefore, defendants Esplin and Chambers are entitled to absolute legislative immunity.

## C. Municipal Liability

Defendants' third ground for dismissal is that Plaintiff has failed to allege municipal liability as required under § 1983 for her claim against Defendant Oakwood Hills. A municipality violates the Constitution when it has an unconstitutional custom or policy. *Brokaw v. Mercer County,* 235 F.3d 1000, 1013 (7th Cir. 2000). To establish an unconstitutional custom or policy under § 1983, the Plaintiff must show: "(1) an express policy that causes a constitutional deprivation; (2) a widespread practice that is so permanent and well settled as to constitute a "custom or usage"; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority." *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002); *see also Brokaw*, 235 F.3d at 1013 (stating "that a [municipal] custom or policy may be established by alleging that a constitutional injury was caused by a person with final policymaking authority").

Plaintiff contends that she is not alleging a *Monell* claim against Oakwood Hills under §1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 713, 98 S. Ct. 2018, 2047 (1978) (holding local governments can be liable for constitutional injuries under § 1983 "when execution of a government's policy or custom can be said to inflict constitutional injury"). Rather, Plaintiff is only seeking indemnification under 745 ILCS 10/9-102 against Oakwood Hills related to her retaliation claims against the individual defendants. 745 ILCS 10/9-102 (2007). "A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." *Id*.; *see also Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997) (stating that 745 ILCS 10/9-102 makes the public

entity an insurer for its employees). Because Sabet was acting within his scope of employment as a police officer when he generated the police report, Plaintiff's Amended Complaint sufficiently states a cause of action under 745 ILCS 10/9-102.[6]

## IV. CONCLUSION

For the reasons set forth above, we find that defendants Esplin and Chambers are entitled to absolute legislative immunity. Additionally, we conclude that the public accusations of misconduct and wrongdoing against the Plaintiff made by defendant Williams are protected by the doctrine of qualified immunity. Therefore, the motion to dismiss on all Counts alleged against defendants Williams, Esplin, and Chambers is granted. However, we find that defendant Officer Ramtin Sabet is not entitled to qualified immunity, and therefore, the motion to dismiss as to Counts I through V alleged against defendant Sabet is denied. Finally, we find that Plaintiff adequately pled under 745 ILCS 10/9-102 that Oakwood Hills could be required to indemnify Sabet if he should be found liable. Accordingly, the motion to dismiss as to Count VIII against Oakwood Hills is denied.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: December 6, 2007

---

[6] Because we are not dismissing this claim, we decline to grant Plaintiff's pending informal request to file a Second Amended Complaint.

17