# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KAREN KELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 CV 1005 |
| ) | |
| ) | Judge Marvin E. Aspen |
| DEAN CHAMBERS, CRAIG ESPLIN, ) | |
| RAMTIN SABET, MAYNARD ) | |
| WILLIAMS, and THE VILLAGE OF ) | |
| OAKWOOD HILLS, IL, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Presently before us is a Motion to Dismiss filed by Defendants Dean Chambers ("Chambers"), Craig Esplin ("Esplin"), and Maynard Williams ("Williams") (collectively, "Defendants").[1] They argue that we must dismiss Karen Kelly's ("Plaintiff") Third Amended Complaint[2] because they are entitled to immunity. For the reasons stated below, we deny Defendants' motion.

## BACKGROUND

Plaintiff, a resident of Oakwood Hills, Illinois, was elected to the Village of Oakwood Hills Board of Trustees ("Board") in April 2005. (3d Am. Compl. ¶ 8). Plaintiff alleges that while she

---

[1] While Officer Ramtin Sabet ("Sabet") and the Village of Oakwood Hills are additional defendants in this case, they did join not in the present Motion to Dismiss.

[2] While to our knowledge Plaintiff has not filed a Second Amended Complaint, because her document is entitled "Third Amended Complaint," we will refer to it as such.

1

was Trustee the community had concerns regarding the expanding size of the Oakwood Hills Police Department ("the Department"), the increasing funds necessary to support the Department, and the conduct of its officers. (*Id*. ¶10). In response, the Independent Citizens Police Committee ("Committee") was formed to explore various alternatives to secure law enforcement services for Oakwood Hills, and Plaintiff became involved in the Committee. (*Id.* ¶ 11).

On October 24, 2006, Plaintiff attended a public gathering hosted by the Committee to discuss law enforcement issues. (*Id*. ¶¶ 12, 15). Plaintiff generated and distributed flyers for this meeting. (*Id.* ¶¶ 13, 14). On October 25, 2006, the *Northwest Herald* published an article about the meeting, which included Plaintiff's criticisms of the Department. (*Id.* ¶¶ 16, 29(f), (g)).

According to Plaintiff, on October 25, 2006, in retaliation for exercising her First Amendment rights, Chambers, Esplin, Williams, and Sabet "conspired to retaliate against [her] for her exercise of her First Amendment rights." (*Id.* ¶ 18). Specifically, Plaintiff alleges that they all "colluded to generate a police incident report regarding a traffic stop, [from two months earlier on August 26, 2006,] that involved the Plaintiff's minor child." (*Id.*).[3] The police report stated that Plaintiff was present at the traffic stop, refused to obey a police officer, and obstructed the officer in the course of his duties. (*Id.* ¶ 19) Neither Plaintiff nor her son were issued citations or arrested at the traffic stop. (*Id.* ¶ 20).

At the December 7, 2006 Board meeting, Esplin, a Village Trustee, "publicly initiated a fact-finding probe regarding Plaintiff's alleged 'potential abuse' of a police officer" during the August 26, 2006 traffic stop. (*Id.* ¶¶ 4, 22). Williams, the Chief of Police, also participated in this fact-

---

[3] Plaintiff's First Amended Complaint did not include allegations that all of the Defendants colluded to generate the report. Instead, it stated that Sabet alone generated the report. (1st Am. Compl. ¶ 18).

2

finding probe. (*Id*. ¶¶ 5, 23). Plaintiff alleges that Chambers, Esplin, Williams, and Sabet all claimed that Plaintiff obstructed a police officer, refused to heed his commands, and attempted to use her position as Trustee to exert undue influence over him. (*Id.* ¶ 24). These accusations were also posted on the Oakwood Hills website. (*Id.* ¶ 26). Plaintiff contends these accusations "were false, malicious, and/or made with reckless disregard of whether the alleged conduct was false or true." (*Id.* ¶ 25).

Plaintiff filed her First Amended Complaint on June 1, 2007, alleging that Defendants retaliated against her for exercising her First Amendment rights and defamed her. On June 28, 2007, all of the Defendants, including Sabet and the Village of Oakwood Hills, moved to dismiss her First Amendment Complaint. On December 6, 2007, we granted Defendants' motion in part and denied it in part. *See Kelly v. Chambers*, No. 07 CV 1005, 2007 WL 4293633, at *9 (N.D. Ill. Dec. 6, 2007). Specifically, we held that Plaintiff had pled a retaliation claim, but that Williams was entitled to qualified immunity because his participation in the fact-finding probe (i.e., making false and slanderous statements about Plaintiff) was limited to "pure speech." *Id.* at *5. Sabet, on the other hand, was not entitled to qualified immunity for his involvement because filing a police report amounted to "more than a mere form of speech," and "a reasonable officer in Sabet's position would have known that filing of a police report under these circumstances would be improper." *Id.* at *5-7.[4] Finally, we found that Chambers and Esplin were entitled to absolute legislative immunity because participating in the "fact-finding probe was a legitimate legislative activity." *Id.* at *8.[5]

---

[4] We also noted that Plaintiff did not allege any "specific factual connections of allegations of conspiracy that might tie the remaining defendants Chambers, Esplin, or Williams to the police report," and we refused to "speculate that such connections exist." *Id.* at *5.

[5] We also held that Plaintiff had sufficiently pled an indemnification claim against the Village of Oakwood Hills under 745 ILCS 10/9-102. *Id.* at *9.

3

On June 30, 2008, Plaintiff filed her Third Amended Complaint. In addition to her previous allegations, she now alleges that Sabet did not act alone in generating the police report on October 25, 2006. (3d Am. Compl. ¶ 18). Instead, she alleges that Chambers, Esplin, Williams, and Sabet all "colluded to generate" the report, (*id.*), and has added a 42 U.S.C. § 1983 conspiracy claim ("Count V") and a § 1983 Equal Protection - Class of One claim ("Count VI") against these four defendants. In addition, she has added various *Monell* claims against the Village of Oakwood Hills.

On July 25, 2008, Defendants filed the present Motion to Dismiss.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, a court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1964-65 (2007); *Killingsworth*, 507 F.3d at 618-19. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

**ANALYSIS**

Defendants argue that, even though Plaintiff has added a conspiracy claim, Esplin and Chambers are still entitled to absolute immunity and Williams is still entitled to qualified immunity.[6] We address these arguments below.

**I. Absolute Immunity**

Defendants argue that even if Plaintiff's conspiracy allegations are true, they still are absolutely immune from suit because they cannot be liable for conspiring to commit an act, which they could have performed themselves with impunity. (Reply at 2 (citing *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992); *Carroll v. Diederich*, No. 04 C 8291, 2005 WL 3180097, at *7 (N.D. Ill. Nov. 28, 2005))). Plaintiff responds that Chamber and Esplin's alleged collusion in the drafting of a fraudulent police report is beyond the scope of their duties as legislators, and thus they do not have immunity.

It is true that "[a] person may not be prosecuted for conspiring to commit and act that he may perform with impunity." *House*, 956 F.2d at 720. However, this analysis requires us to determine: (1) what specific act the conspiracy was designed to further, and (2) whether the defendants would have immunity had they personally performed that particular act. *See id.* at 720 (finding that because witness had absolute immunity for his alleged false testimony, he could not be held liable

---

[6] Defendants also argue that the defamation counts (Counts XIII and XIV) against Esplin and Williams must be dismissed because their statements are privileged under Illinois law. (Mot. at 3). However, we need not reach this issue as Plaintiff moved to voluntarily dismiss both of these two counts in her response. Accordingly, we grant her motion to voluntarily dismiss Counts XIII and XIV.
   In addition, while Defendants' motion indicates that they are moving to dismiss all counts against them, they do not present any arguments regarding why dismissal of Count VI (Equal Protection - Class of One) is appropriate. Accordingly, this opinion is limited to Plaintiffs' other claims.

for a conspiracy to present false testimony); *Carroll*, 2005 WL 3180097, at *7 (dismissing conspiracy claim against prosecutors because they had already been found immune from the specific acts they allegedly conspired to further). Here, Plaintiff has alleged that Chambers, Esplin, Williams, and Sabet all colluded to generate a false police report. (3d Am. Compl. ¶¶ 18, 52). Thus, the relevant act for purposes of the immunity analysis is the creation of the false police report, and we must determine whether Chambers and Esplin would have absolute immunity if they had created the false police report themselves.

In our previous opinion, we explained that as local legislators, Chambers and Esplin may be protected by absolute immunity from § 1983 claims depending on the circumstances. *See Tenney v. Brandhove*, 341 U.S. 367, 376-77, 71 S. Ct. 783, 788 (1951); *see also Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S. Ct. 966, 972 (1998). When deciding whether to grant absolute legislative immunity, we take a functional approach, examining whether the legislator was performing a "legislative activity." *Hansen v. Bennett*, 948 F.2d 397, 401-02 (7th Cir. 1991); *see also McCally v. City of Belvidere*, No. 96 C 50162, 1996 WL 734632, at *9 (N.D. Ill. Dec. 17, 1996). For example, as we previously explained, investigation and inquiry by a committee of a legislative branch is a legislative function entitled to immunity. *See Tenney*, 341 U.S. at 378, 71 S. Ct. at 789. Furthermore, "[t]he Government official seeking immunity . . . has the burden of showing that an exemption from personal liability is justified." *Hansen*, 948 F.2d at 401 (citations omitted).

In the instant case, we find that generating a false police report is not a legislative activity entitled to absolute immunity. While an investigation, such as the fact-finding probe alleged in the First Amended Complaint, is a "legislative activity," *see Tenney*, 341 U.S. at 378, 71 S. Ct. at 789, it is not investigative nor traditionally the function of the legislature to create, let alone falsify, a

6

police report. Furthermore, we find that Defendants have not cited any cases that hold otherwise,[7] and thus, have not met their burden of demonstrating immunity. *See Hansen*, 948 F.2d at 401. Given that Esplin and Chambers would not have absolute immunity for generating the false police report, they do not have absolute immunity for conspiring/colluding to generate it. *See House*, 956 F.2d at 720.

## II. Qualified Immunity

Defendants argue that Williams still is entitled to qualified immunity because his participation in the alleged conspiracy is limited to pure speech. (Reply at 4). Plaintiff claims, however, that her new allegations specifically allege that Williams' participation amounted to more than speech. (Resp. at 5).

In our December 6, 2007 opinion we found that Williams was entitled to qualified immunity because his alleged participation in the fact-finding probe was limited to pure speech. *See Kelly*, 2007 WL 4293633, at *5 (citing *Villagrana v. Vill. of Oswego*, No. 04 C 4603, 2005 WL 2322808, at *4 (N.D. Ill. Sept. 22, 2005)). We reached this result because when a public official's alleged retaliatory acts are "in the nature of speech, . . . such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000). However, we also held that Sabet was not entitled to immunity because generating a police report amounts to more than speech. *Kelly*, 2007 WL 4293633, at *5; *see also Lifton v. Bd.*

---

[7] Defendants attempt to analogize this case to a prosecutor's absolute immunity for presenting, or conspiring to present, false evidence. (*See* Reply at 3). Indeed, a prosecutor is immune for his actions when acting as an advocate of the State, even if he allegedly offers false testimony or suppresses exculpatory evidence. *See Imbler v. Pachtman*, 424 U.S. 409, 410, 96 S. Ct. 984, 985 (1976). However, the scope of prosecutorial immunity and legislative immunity must differ due to the different functions and responsibilities of each. Therefore, we find this analogy as presented unconvincing.

*of Educ. of City of Chi.*, 416, F.3d 571, 576 n.3 (7th Cir. 2005).

Plaintiff's Third Amended Complaint now alleges that Williams "colluded" with the other Defendants "to generate a police incident report regarding a traffic stop that involved the Plaintiff's minor child." (3d Am. Compl. ¶ 18). Taking this allegation as true, we find that conspiring and colluding to create a false police report amounts to more than just speech. *See Lifton v. Bd. of Educ. of City of Chi.*, 416, F.3d 571, 576 n.3 (7th Cir. 2005) ("'[T]he injury alleged need not be great in order to be actionable.'" (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982))). Thus, Defendants' contention that there are "[n]o allegations [to] show or suggest that Williams engaged in any coercive conduct other than to summarize the allegations made by Sabet," is incorrect, (Reply at 4), and Williams is not entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, we deny Defendants' Motion to Dismiss. In addition, we grant Plaintiff's motion to voluntarily dismiss Counts XIII and XIV. It is so ordered.

                                              Honorable Marvin E. Aspen
                                              U.S. District Court Judge

Dated: September 17, 2008